DOMINGO GALARZA LUGO ET AL., Plaintiffs and Appellees, *v.* G. LLINÁS & CO., Defendant and Appellant.

No. 10073.   Argued February 9, 1950.—Decided March 29, 1950.

*Luis López de Victoria* and *Leopoldo Tormes García* for appellant.   *R. Atiles Moréu* for appellees.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

A stray ox, wandering on a public highway, attacked, ran over and caused injuries to Eva Vázquez Torres. Domingo Galarza Lugo and Eva Vázquez Torres, as husband and wife, sued the defendant G. Llinás & Co., a mercantile partnership of Yauco, for damages estimated to amount to $10,000.00. They alleged that the partnership was the "owner and immediate possessor of the ox which was used for the partnership's own benefit and profit." It was further alleged that the accident was due to the negligence of the defendant in allowing the ox to wander at large on a public highway and having no one in charge to prevent damages to pedestrians.

The defendant in its answer accepted only one alleged fact of the complaint, the first, in which the capacity of the parties is alleged, and denied generically all the other facts alleged.

Trial was held and the court, after setting forth in its opinion the above allegations, made, among others, the following findings of fact:

"1st: That the plaintiffs Domingo Galarza Lugo and Eva Vázquez Torres, are of legal age, married and resident of Yauco; and that the defendant, G. Llinás & Co., is a mercantile partnership established in accordance with the Code of Commerce (*Cf.* answer).

"2nd: That the accident sustained by the plaintiff, Eva Vázquez Torres, which gave rise to the complaint in this case, *occurred exactly as alleged in the complaint.*

"3rd: That the ox which attacked and injured the plaintiff, as was established in the second preceding finding, belonged to and was in the immediate possession of the defendant, the day of the events. In the morning of that day it had been part of a herd of oxen which passed by the aforesaid place in an opposite direction, driven then by the workmen *of the defendant,* and in the afternoon, after the accident, said ox *was secured by said laborers of the defendant, who carried it away in a truck,* also owned by the defendant.

"4th: That Jorge Rodríguez, driver of a bus, arrived at the place of the accident, helped Luis Torres pick up the plaintiff from the ground where she lay unconscious, and drove her in his vehicle *to Llinás' home* where he was ordered to take her to Dr. Antonmattei. Rodríguez was paid *by Llinás* for taking plaintiff to the doctor.

"5th: That when witness Rodríguez drove the plaintiff to Llinás', *Mr. Jorge Llinás gave her ten dollars* for her expenses; he said he would pay for any medicines she might need, and gave her an order addressed to the Rosario Drug store; and that she did not even have to pay for the medicines used by Dr. Antonmattei in treating her during some eight days.

". . . . . . . .

"12th: The defendant denied facts which were known to it personally, such as the ownership of the ox and its *possession,* the

occurrence of the accident, as well as its natural consequences of physical pain and mental suffering; and did not introduce any evidence to contradict the material damages alleged. It is ordered to pay attorney's fees in the amount of $125.00." (Italics ours.)

As its first conclusion of law the court stated the following:

"1st: The defendant as owner *and possessor of the ox* which *it used* and which caused the damages proven by the plaintiff is liable for the injuries caused to the latter. Section 1805, Civil Code, 1930 ed." (Italics ours.)

Consequently it rendered judgment sentencing the defendant to pay to the plaintiff $445.86 for damages and $125 for attorney's fees, plus costs. Disagreeing, the defendant appealed and alleged that the lower court erred in finding that the ox was in the possession of and belonged to the defendant, G. Llinás & Co., at the time of the accident, since plaintiffs' evidence only tended to prove certain relation between said ox and Jorge Llinás; that the judgment is contrary to the facts and to law, and that the imposition of costs and attorney's fees on defendant did not lie.

We have carefully considered the evidence presented by the plaintiffs—the defendant confined itself to presenting by stipulation, with the plaintiffs, the medical report of Dr. Antonmattei on the examination of plaintiff—and we are of the opinion that the lower court erred in weighing said evidence and that the judgment should be reversed. We shall turn briefly to the testimony of plaintiffs' witnesses, particularly as to the point of who was the owner or had possession of the ox.

*Luis Torres Vega* testified that on June 19, 1948, as he walked along the public highway, Rancheras, of Yauco, about one o'clock in the afternoon and while Eva Vázquez Torres walked behind him, he saw *"an ox coming which belonged to don Jorge, and I identified it because I had seen the cattle go up in the morning"* (P. 4, T.E.); that the ox was running

"at full speed" and he told the lady to keep to one side; that the ox hit and threw him down and then attacked and ran over her; that at that moment Jorge Rodríguez arrived in a vehicle, a bus, and they took the plaintiff to town, "to don Jorge's house" (*Idem*). He described the injuries received by the plaintiff and then testified that the ox continued running along the highway and upon nearing his home they made a small enclosure on the highway and the ox finally went inside a cattle pound, and then "a laborer was sent in a truck *from the house·of Jorge Llinás* to get the ox" (p. 7 *idem*); that the herd of oxen which passed by in the morning was being taken *"from don Jorge's* to Rancheras." (Italics ours.)

*Jorge Rodríguez* testified that on that day he was driving his bus from Rancheras and an ox ran past him, that he followed behind and upon arriving at the place where the accident occurred, picked up the plaintiff, who was injured, and drove her *"to Llinás' "* because he *knew that the ox belonged to him* (p. 13 *id*); that there he spoke "to Llinás himself . . . the one who was at the office, and when I told him, he said: "Take her to Dr. Antonmattei" (*id*); that when he delivered "the message *at Llinás'*, they sent for a truck"; and when the truck arrived, they made a circle to get the ox, which was tied on the truck and taken away "by the men who came from Llinás' house" (p. 15 *id*); that the trip "to the house of Llinás", where the lady was taken, was paid for by "the house of Llinás" (p. 16 *id.*). (Italics ours.)

*Domingo Galarza Lugo*, one of the plaintiffs, testified that when he was informed of the accident, he went *"to see Jorge Llinás"* and spoke *"to don Jorge"* (p. 25 *id.*) about the injuries received by his wife "who had been injured by an ox *of his*, and *he told me* not to worry that my wife was well taken care of, that *he had* sent her to Dr. Antonmattei, and that I had nothing to worry about"; that his wife was treated by said physician who sent for the medicines "at Llinás' " and were paid for "by *Jorge Llinás*" (p. 25 *id.*); that the

doctor did not charge him anything nor did he pay for the medicines; that "he went to see *don Jorge* and he told me how the patient was getting along. . . ." p. 27 *id.*); that in the afternoon he went with his wife, who had already been treated, because *"she had been sent by Mr. Jorge Llinás"* (p. 28 *id.*) (Italics ours.).

*Eva Vázquez Torres*, plaintiff, testified as to how the accident happened; that she was taken to Dr. Antonmattei, who treated her for eight days; that the medicines he used were charged at Ulises del Rosario's, a drugstore, *"by order of don Jorge Llinás"* (p. 33 *id.*); that she went to that drugstore "Because when I arrived at *Mr. Jorge Llinás'*, injured, *he made himself responsible* for what might happen to me because the injuries had been caused *by his ox* (p. 34 *id.*). That she knows this "because he spoke to me and to my husband on that very same day" (*idem*); that he told her not to worry that he would take her to Dr. Antonmattei to be treated and that he would pay for the medicines; that he paid for her fares and gave her ten dollars for her round trips; that she did not see Mr. Jorge Llinás pay for the medicines, but that he ordered them to be charged, for otherwise, they would not have been delivered to her; that she knows that the oxen that passed by in the morning *"belonged to Jorge Llinás" because they asked.* (p. 38 *idem*). (Italics ours.)

This is all the evidence which tends to establish who was the owner of the ox or who had possession thereof on the day of the accident. At no time did any of the witnesses say that it belonged to the defendant G. Llinás & Co. or that it was in the latter's immediate possession or that in the morning of the day of the accident it formed part of a herd of oxen driven by defendant's laborers as stated by the lower court in its third finding of facts. On the contrary, all the evidence tended to show and the testimonies of Luis Torres Vega, Domingo Galarza Lugo and Eva Vázquez Torres, these last two being the plaintiffs, showed affirmatively, that the ox

belonged to Jorge Llinás, that it formed part of a herd of oxen belonging to him and that it was Llinás who sent the plaintiff to be treated, gave her money and paid for her medicines. Since plaintiff herself and Luis Torres Vega so testified, we do not understand why this action was instituted against the mercantile partnership G. Llinás & Co. The fact that Jorge Llinás may have some connection with this commercial firm (and this was not proved) does not justify the action. This principal defect is not cured by a mere allusion to isolated phrases of the witnesses when referring to "at Llinás' " so as to make them applicable to the commercial firm, G. Llinás & Co., since the witnesses specifically testified that the animal belonged to Jorge Llinás and this statement necessarily referred to him.

The cases of *Osorio* v. *Taboada*, 52 P.R.R. 780, *Andino* v. *Central Victoria, Inc.*, 57 P.R.R. 301 and *Ferrer* v. *Rivera*, 56 P.R.R. 480, construing § 1805 of the Civil Code, 1930 ed.[1] among others cited by the lower court, are easily distinguished from the present case. It was proved in all of them that the animal belonged to or was in the possession of the defendant, and even though in *Osorio* v. *Taboada, supra*, it was proved that the dog which caused the injuries came out of the establishment M. Taboada & Co., judgment was rendered against Manuel Taboada as it was shown that he was in the possession of the establishment as well as of the dog. In the present case Jorge Llinás was not shown to be acting in the name of the firm G. Llinás & Co. so as to shift on this firm the liability for the damages caused by his ox.

■■ As we stated in *Troche* v. *Matos*, 52 P.R.R. 271, 273: "The liability arising from the keeping of an animal is, under the civil law, quite a serious one. It is apparently not

---

[1] Section 1805 of the Civil Code provides:

"The possessor of an animal, or the one who uses the same is liable for the damages it may cause, even when said animal should escape from him or stray. .

"This liability shall cease only in case the damage should arise from *force majeure* or from the fault of the person who may have suffered it."

based on negligence, but on the mere possession or use." And see *Beltrán* v. *Sucn. J. Serrallés*, 70 P.R.R. 81, and cases cited therein. Therefore, in the absence of any justifiable evidence, it should not be decided, by inference, that a possession which does not exist was established. In order that a case may be considered proved by inference it should be based on a proved fact—§ 461 of the Code of Civil Procedure—since "An inference is a deduction which the reason of the judge or jury makes from the facts proved, without an express direction of law to that effect." Section 459, Code of Civil Procedure.

■ The appellees claim that the appellant should have set forth in its answer, as an affirmative defense under Rule 8 (*c*) of Civil Procedure, the actual ownership of the ox. We do not agree. Said rule states, so far as pertinent, that:

"In pleading to a preceding pleading, a party shall set forth affirmatively any of the following defenses: Accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, prescription, waiver and any other affirmative defense . . ."

Under said Rule a defendant is not bound to inform the plaintiff of facts which protect his cause of action. As shown by the different affirmative defenses enumerated in the Rule, they cover situations where, although the defendant might be held responsible if the averments of the complaint are proved, some of said defenses might exonerate him of responsibility. 2 Moore's Federal Practice, 2nd. ed., § 8.27, pp. 1686–98.

■ The burden was on the plaintiffs to present sufficient evidence to prove their pleadings. Section 470, Code of Civil Procedure; *Flores* v. *Torres*, 58 P.R.R. 725; *Abréu* v. *Díaz*, 52 P.R.R. 715; *Heirs of Rivera* v. *Godreau & Co.*, 59 P.R.R. 829. But they failed to do so. Despite their knowledge, from the very day of the accident, that the ox belonged to

Jorge Llinás and without having any evidence to prove that G. Llinás & Co. was in the possession or made use of said animal, they preferred to sue said concern.   They can not complain now if their suit does not prosper.   The judgment will be reversed and the complaint dismissed with costs.